UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AUGUST S. W.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:26-CV-5045-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DESCISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of her applications for disability insurance benefits ("DIB").[1] The Court concludes that the Administrative Law Judge ("ALJ") erred in not addressing significant probative evidence and evaluating Plaintiff's subjective symptom testimony. Had the ALJ properly considered this evidence, the residual functional capacity ("RFC") may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and this matter is reversed and remanded pursuant to sentence

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3.

four of 42 U.S.C. § 405(g), to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

## I. Procedural History

Plaintiff protectively filed an application for DIB pursuant to 42 U.S.C. § 423 (Title II) on August 4, 2022, alleging disability as of September 18, 2020. Administrative Record ("AR") 18. Plaintiff's claim was denied initially on March 27, 2023, and upon reconsideration on February 6, 2024. *Id.* Plaintiff requested a hearing on March 19, 2024, and later amended her alleged onset date to January 1, 2023. *Id.*

The matter came on for a hearing before ALJ Janice Barnes-Williams on January 7, 2025. AR 55-79. On January 27, 2025, the ALJ issued a decision and found that Plaintiff was not disabled and did not qualify for DIB. AR 19.

The Social Security Appeals Council denied review on November 18, 2025, making the Commissioner's decision subject to judicial review. AR 1. Plaintiff then filed a Complaint in the United States District Court for the Western District of Washington on January 16, 2026. Dkt. 1.

## II. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

**III. Discussion**

Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Dkt. 8 at 1, 3. Plaintiff also argues that the ALJ did not properly consider the opinions of Michelle Maciel, Psy.D., and Su-Yong Fullmer, ARNP. *Id.* at 14.

A. <u>Failure to Discuss Significant Probative Evidence</u>

The ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984). The ALJ, however, "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent*, 739 F.2d at 1395). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

*i. Dr. Maciel's Opinion*

Dr. Maciel examined Plaintiff at the Commissioner's request on March 11, 2023. AR 674. Dr. Maciel diagnosed Plaintiff with "major depressive disorder, mild." AR 676. And in Plaintiff's functional assessment, Dr. Maciel concluded Plaintiff would have difficulty (1) "performing detailed and complex tasks," and (2) "dealing with usual stress encountered in the workplace." AR 676-77.

The ALJ found Dr. Maciel's opinion to be persuasive. AR 29. The ALJ accounted for Dr. Maciel's opinion regarding Plaintiff's limitation in performing complex tasks, limiting Plaintiff's RFC to simple, routine, and repetitive tasks. AR 25, 29, 676. Critically, the ALJ did not discuss Dr. Maciel's opinion as to Plaintiff's difficulty dealing with usual stress encountered in the workplace. AR 25, 29, 677. And, as discussed below, the ALJ also did not discuss several

aspects of Plaintiff's testimony pertaining to the severity of her symptoms. *Infra* Part III(B)(i)-(ii).

Defendant argues that it was unnecessary for the ALJ to explicitly address and/or incorporate the opined limitation. Dkt. 13 at 10-11.[2] Regardless of Defendant's contention, the Court cannot determine if the ALJ properly included Dr. Maciel's opined limitation regarding Plaintiff's inability to manage stress in the RFC or simply ignored the limitation. *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (explaining that an ALJ must "build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

Therefore, the Court finds the ALJ erred.

*ii. Harmless Error*

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

Applying the harmless error analysis, the Court concludes that the ALJ committed harmful error in failing to address significant probative evidence. Had the ALJ properly

---

[2] Defendant relies on *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008) and *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217 (9th Cir. 2010) to support its argument that the ALJ incorporated Dr. Maciel's opined limitation into Plaintiff's RFC. Dkt. 13 at 11. Neither of these cases are instructive. *Turner* does not contemplate an ALJ failing to address an opined limitation altogether. 613 F.3d at 1122-23. And "courts have frequently distinguished *Stubbs-Danielson* as inapplicable to cases with opined limitations beyond concentration, persistence, or pace." *Ray v. Bisignano*, No. 1:25-cv-01177-SKO, 2026 WL 1847360, *6 (E.D. Cal. 2026); *Stubbs-Danielson*, 539 F.3d at 1174. Here, Dr. Maciel's opined limitation pertained to stress, not concentration, persistence, or pace. AR 677; *see* SSR 85-15 (explaining that unskilled work requires the ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.").

considered Dr. Maciel's opined limitation, Plaintiff's RFC may have included additional limitations related to Plaintiff's ability to deal with the usual stressors in the workplace, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and the proper disposition is to reverse and remand the matter for additional proceedings. *See Stout*, 454 F.3d at 1055; *see also Molina*, 674 F.3d at 1115.

B. Subjective Symptom Testimony

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison*, 759 F.3d at 1014. At the first step, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* This evidence need not validate the severity of the alleged symptoms; rather, "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).

If the claimant satisfies this first step and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1112 (quoting *Garrison*, 759 F.3d at 1014-15). An ALJ may not reject the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346–47 (9th Cir. 1991). "Although an ALJ may use '*inconsistent* objective medical evidence in the record to discount subjective symptom testimony,' the ALJ 'cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective

testimony.'" *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (quoting *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)).

"This standard is 'the most demanding required in Social Security cases.'" *Smith*, 14 F.4th at 1112 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). To meet this standard, ALJs must "identify which testimony [they] found not credible and why." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). The Ninth Circuit has reaffirmed that the clear and convincing standard requires the ALJ to make "specific finding[s]:"

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Smith*, 14 F.4th at 1112 (quoting *Brown-Hunter*, 806 F.3d at 489). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. As with all findings by the ALJ, the specific, clear, and convincing reasons also must be supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g).

*i. Plaintiff's Subjective Symptom Testimony*

At Plaintiff's disability hearing, on January 7, 2025, she testified that the main issues keeping her from working were syncope, fibromyalgia, Crohn's, and arthritis. AR 62-64. Plaintiff's "constellation of symptoms" included pain, nausea, vomiting, diarrhea, and passing out. AR 64. Plaintiff did not always pass out when she had nausea, vomiting, and diarrhea, so she did not "have any way to predict when [her fainting spells were] going to happen." AR 65. Plaintiff also had "a lot of brain fog" as a result of her ADHD and fibromyalgia. AR 66.

"Prior to leaving work in September [2021], [she was un]able to maintain regular attendance," as she had "flares that required [her] to either not attend work, … leave work early, or take an extended break during work" at least "twice a week." AR 63-64. And, since January 1, 2023, Plaintiff explained that she was having fainting spells more often and her fibromyalgia and arthritis had "gotten way worse." AR 63.

At home, Plaintiff's daily activities varied depending on how she was feeling. AR 69. Plaintiff never cooked or cleaned like she used to, but she helped around the house when able. *Id.* For instance, Plaintiff reported in a sworn statement that she would do the dishes, vacuum, do laundry, and make dinner, but she would "rest a lot in between and try to space stuff out." AR 286. On bad days, however, she was "usually in bed, near a bathroom[,] or in the bathroom for a good part of [her] day." AR 291. And even on good days, she could only walk 5 to 10 minutes before needing to stop and rest. AR 289.[3]

Plaintiff had varying success with medications. AR 70. Plaintiff's medications would help "[f]or some things," and she would have side effects. *Id.* In 2023, for example, Su-Yong Fullmer, ARNP, examined Plaintiff and noted that her pain caused by her fibromyalgia "decreased by taking medication and resting." AR 666. But, in 2024, Dr. Tanya Wilke, Plaintiff's primary care physician, noted that Plaintiff's fibromyalgia limited her "ability to complete daily tasks," and while medication "help[ed] her do daily chores," it was "[n]ot adequate relief for working." AR 850. And, in May 2024, Dr. Wilke observed that Plaintiff was suffering from a flare and continued to have pain in her right rib and back. AR 840. Vicodin

---

[3] The ALJ noted that Plaintiff's symptoms reportedly prevented her "from lifting more than 20 pounds, walking more than half a block, walking more than 10 minutes, and concentrating for more than 'a minute or so.'" AR 26 (citing AR 273, 289). The ALJ relied, in part, on Plaintiff's husband's third-party report to determine these alleged limitations.

helped Plaintiff complete daily activities, but Dr. Wilke did not note that it was sufficient for work. *Id.*

*ii. The ALJ's Decision*

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce some of the symptoms alleged. AR 26. The ALJ did not, however, find that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were fully consistent with the evidence in the record. AR 26-28. The ALJ ultimately concluded that the exertional, postural, and environmental limitations within the RFC accommodated Plaintiff's right shoulder and right hip degenerative joint disease, syncope, fibromyalgia, Crohn's disease, and accompanying symptoms. AR 28.

At the outset, the ALJ failed to address several portions of Plaintiff's testimony regarding the severity of her symptoms. AR 24-30. For instance, the ALJ relied on the fact that Plaintiff was able to perform several daily activities to determine her RFC. AR 27-28. But the ALJ did not acknowledge Plaintiff had to take breaks throughout the day when working around the house. AR 24-30, 69, 286. The ALJ also did not recognize Plaintiff reported that, on bad days, she was "exhausted and in pain" and she would "just go to the bathroom and rest a lot." AR 286. This was error. *Flores*, 49 F.3d at 571.

The ALJ similarly erred in rejecting Plaintiff's subjective symptom testimony. For example, regarding Plaintiff's fibromyalgia, the ALJ observed that Plaintiff: (1) showed only tenderness and positive trigger points in her neck, right shoulder, and right knee; (2) exhibited a normal gait, five out of five strength, full or near full range of motion, intact sensation, and/or two plus reflexes during numerous examinations; and (3) had decreased pain by taking medication and resting. AR 26-27.

The ALJ failed to articulate how the cited medical evidence was actually inconsistent with Plaintiff's testimony. The ALJ noted that Plaintiff showed only tenderness and positive trigger points in her neck, right shoulder, and right knee, but the ALJ made no effort to explain how that contradicted Plaintiff's testimony. *Blakes*, 331 F.3d at 569; *Brown-Hunter*, 806 F.3d at 489 (explaining that "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination.").

Furthermore, the medical evidence the ALJ relied on does not support any alleged inconsistencies. First, Plaintiff's normal findings regarding her gait, strength, range of motion, sensation, and reflexes "are perfectly consistent with debilitating fibromyalgia." *Revels v. Berryhill*, 874 F.3d 648, 656, 666 (9th Cir. 2017). Indeed, this Court has recently affirmed that an ALJ must be cautious about "relying on physical measures to discount fibromyalgia claims." *Sarah J. E. v. Comm'r of Soc. Sec.*, No. 3:25-CV-5833-DWC, 2026 WL 1413192 (W.D. Wash. 2026).[4]

Second, the ALJ's reliance on a 2023 examination documenting Plaintiff's pain decreased with medication and rest is directly contradicted by Dr. Wilke's subsequent treatment notes. AR 666, 850. When examining Plaintiff, Dr. Wilke observed that Plaintiff's fibromyalgia limited her "ability to complete daily tasks," and while medication helped, it was "[n]ot adequate relief for working." AR 666, 850. Even though medication helped Plaintiff complete daily

[4] Defendant cites to several cases to support that an ALJ may reject a claimant's testimony regarding the severity of their fibromyalgia symptoms in the presence of normal findings of gait, strength, range of motion, sensation, and reflexes. Dkt. 13 at 7-8 (citing *Nadon v. Bisignano*, 145 F.4th 1133 (9th Cir. 2025); *Franchino v. Kijakazi*, No. 21-17140, 2022 WL 16548014 (9th Cir. 2024); *Smith v. Berryhill*, 752 Fed. Appx. 473 (9th Cir. 2019); *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999)). These cases are inapposite to the case at bar because none of the cases explicitly address an ALJ rejecting a claimant's subjective symptom testimony about pain resulting from fibromyalgia on the basis of normal findings like those at issue here.

activities, the ALJ's finding that the medication provided sufficient relief to enable Plaintiff to work is not supported by substantial evidence.

Accordingly, the ALJ's finding that Plaintiff's testimony about the severity of her symptoms was inconsistent with the objective evidence in the record did not constitute a sufficiently specific, clear, and convincing reason supported by substantial evidence. Therefore, the ALJ erred in assessing Plaintiff's subjective symptom testimony.

*iii. Harmless Error*

Applying the harmless error analysis, the Court concludes that the ALJ committed harmful error in failing to discuss significant probative evidence and evaluating Plaintiff's subjective symptom testimony. Had the ALJ properly considered this evidence, Plaintiff's RFC may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and the proper disposition is to reverse and remand the matter for additional proceedings. *See Stout*, 454 F.3d at 1055; *see also Molina*, 674 F.3d at 1115.

C. <u>Remaining Issues</u>

In light of this disposition, the Court need not address Plaintiff's remaining arguments regarding the ALJ's other bases for rejecting her subjective symptom testimony or the medical opinion evidence. On remand, the ALJ is instructed to reconsider the entire Social Security sequential evaluation process, including Plaintiff's subjective symptom testimony and the medical opinion evidence pertaining to Dr. Maciel's and Fullmer's opinions, and, if necessary, Plaintiff's RFC. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's

limitations is defective.”); *Watson v. Astrue*, No. ED-CV-09-1447-PLA, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (concluding the RFC and hypothetical questions posed to the vocational expert at Step Five were defective when the ALJ did not properly consider physicians’ findings).

## IV. Conclusion

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED**.

Dated this 10th day of September, 2026.

David W. Christel
United States Magistrate Judge